**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **CIVIL ACTION NO. 06-725 (JP)** |
| | **:** | |
| | **:** | |
| **PAYMENT PROCESSING CENTER,** | **:** | |
| **LLC, et al.** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**ORDER APPOINTING TEMPORARY RECEIVER**
**FOR PAYMENT PROCESSING CENTER, LLC**

**AND NOW**, this ____ day of _____, 2006, upon consideration the Government's

Motion for Appointment of Temporary Receiver for Payment Processing Center, LLC, and all

papers submitted in opposition to the government's motion, **IT IS ORDERED** as follows**:**

1.      The Government's Motion for Appointment of Temporary Receiver is

**GRANTED**.

2.      It is **FURTHER ORDERED** that Wayne D. Geisser, CPA, CVA, CFE  of Nihill

& Riedley, P.C. is appointed Temporary Receiver for Payment Processing Center, LLC, pursuant

to 18 U.S.C. §1345(a)(2)(b)(ii) and this Court's equitable powers.  The Temporary Receiver is

directed to identify and preserve to the greatest extent possible Payment Processing Center,

LLC's assets and to maintain the integrity of its records and accounting system.

3.      The Temporary Receiver is authorized to:

a.      take and retain immediate possession, custody, and control of all assets

and property and the books and records of PPC;

b.      take all steps he deems necessary to secure and protect the assets and property of PPC, including but not limited to the premises, files, and information systems of PPC;

c.      engage and employ persons, in his discretion, to assist him in carrying out his duties and responsibilities hereunder, including accountants, attorneys, securities traders, investment advisers, and other experts;

d.      acquire and retain all rights and powers that the owners of PPC would have to manage, control, operate, and maintain PPC (including but not limited to the power to direct, hire, suspend, and terminate personnel), and to possess, receive, or use income, earnings, rents, and profits to commence, maintain, defend, or participate in legal proceedings, to sue for, collect, receive and take into possession all goods, chattels, rights, general intangibles, rights in legal actions, credits, monies, effects, lands, books and records of account, and other papers, including exclusive authority to make expenditures on behalf of PPC, with a view to preserving assets and the records of PPC;

e.      open and close bank accounts and securities accounts; to purchase or sell securities in any such account of PPC; and to execute checks or otherwise disburse money from those bank or securities accounts of PPC to pay its obligations in the normal course of business; except, however, that pending further order of the Court, PPC shall make no payment, distribution, or redemption to any defendant, other than as reasonable compensation for services provided;

f.      review the records and reports of transactions by PPC and immediately report to the Court any transactions that appear not to be in the ordinary course of business;

if appropriate, file for relief and protection under the Federal Bankruptcy Code, on behalf of PPC, after notice to all parties in this action;

g.      identify victims of telemarketing fraud who had money debited from their bank accounts by PPC and make refunds from PPC frozen assets; and

h.      take such further action as the Court shall deem equitable, just and appropriate under the circumstances upon proper application.

4.      The Temporary Receiver may apply to the Court for further instructions or for additional authority as may be needed to accomplish its purpose.

5.      The Temporary Receiver shall place assets of PPC into interest bearing accounts.

6.      Within forty-five (45) days after his appointment, the Temporary Receiver shall ll report to the Court and the parties by September 1, 2006 (subject to such extensions as may be granted in writing by the Court) the following information:

a.      all assets, liabilities, money, funds, securities, and real or personal property currently held directly or indirectly by or for the benefit of PPC and any controlled, related, or affiliated entities, including but not limited to bank accounts, brokerage accounts, investments, business interests, and real and personal property, wherever situated, identifying and describing each asset and liability, its current location and account;

b.      the names, last known addresses, and account-identifying information of all financial institutions, bailees, debtors and other persons and entities that are currently holding any money, assets, funds, securities, real or personal property for the direct or indirect benefit of PPC.

7.      Defendants and their successors, assigns, shareholders, officers, agents, servants,

employees, subsidiaries or affiliates, and those persons in active concert or participation with them, who receive actual notice of this Order, by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, are enjoined and restrained from interfering in any way with the functions and duties of the Temporary Receiver and shall take no action, directly or indirectly, to hinder or obstruct the Temporary Receiver in the conduct of his duties.

8. The Temporary Receiver shall have authority to enter into such agreements as are necessary in connection with the performance of his duties, including but not limited to the retention and employment of investigators, attorneys, accountants, and technical specialists of the Temporary Receiver's choosing, including, without limitation, members and employees of the Temporary Receiver's firm, to assist, advise, and represent the Temporary Receiver. The Temporary Receiver is expressly permitted to retain the services of defendant Michelle Quigley, on an hourly basis, as the Temporary Receiver deems necessary to accomplish his duties.

9. The Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized shall be entitled to reasonable compensation for the performance of duties pursuant to this Order, and for reasonable out-of-pocket expenses incurred by them, to be paid from PPC's funds frozen by the Court in this action, upon approval of the Court. The Temporary Receiver shall file with the Clerk of the Court, and serve on the parties, periodic accountings and requests for the payment of such reasonable compensation.

10. No bond shall be required in connection with the appointment of the Temporary Receiver.

11. **IT IS FURTHER ORDERED** that Defendants' Motion to Modify the Stipulated

Preliminary Injunction to Hold the Monitor's Viability Reporting Obligation in Abeyance

is **DENIED AS MOOT**.

**BY THE COURT:**

_____
**HONORABLE JOHN R. PADOVA**
*Judge, United States District Court*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO.  06-725 (JP)** |
| | : | |
| | : | |
| **PAYMENT PROCESSING CENTER,** | : | |
| **LLC, et al.** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S MOTION FOR APPOINTMENT OF TEMPORARY**
**RECEIVER FOR PAYMENT PROCESSING CENTER, LLC**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney

for the Eastern District of Pennsylvania, and Joel M. Sweet and Mark Anderson, Assistant

United States Attorneys for the same district, hereby moves for the appointment of a temporary

receiver for defendant Payment Processing Center, LLC, under 18 U.S.C. §1345(a)(2)(b)(ii) and

the Court's equitable powers, for the reasons set forth in the accompanying memorandum.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

_____
VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division

_____

JOEL M. SWEET
Assistant United States Attorney


_____

MARK ANDERSON
Assistant United States Attorney


Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel.  215-861-8200
Fax. 215-861-8349


Dated: July 14, 2006

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 06-725 (JP)** |
| | : | |
| | : | |
| **PAYMENT PROCESSING CENTER,** | : | |
| **LLC, et al.** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR APPOINTMENT OF TEMPORARY RECEIVER
FOR PAYMENT PROCESSING CENTER, LLC**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney

for the Eastern District of Pennsylvania, and Joel M. Sweet and Mark Anderson, Assistant

United States Attorneys for the same district, submit this memorandum in support of its motion

for the appointment of a temporary receiver for defendant Payment Processing Center, LLC,

under 18 U.S.C. §1345(a)(2)(b)(ii) and the Court's equitable powers.[1]

The purpose of the government's section 1345 action against the defendants is to stop

ongoing fraudulent conduct and to restrain assets so that they may be available to provide

restitution to victims. Whether the Court-restrained assets of PPC will remain available to pay

restitution to the victims of the defendants' schemes, however, is uncertain. PPC's restrained

assets are depleting at an alarming rate. It appears that the assets are being wasted to operate a

---

[1] This memorandum also is submitted in opposition for the defendants' motion to
modify the preliminary injunction to hold in abeyance the Monitor's report on PPC's solvency.
(Docket No. 155.) The defendants filed their motion three days after the Monitor reported to the
Court that PPC is not viable as a going concern. The government maintains therefore that the
defendants' motion was moot when filed.

business with no prospects for earning income, and further are being diverted for purposes contrary to the interests of the victims, and inconsistent with the purpose of the Stipulated Preliminary Injunction.

The appointment of a temporary receiver charged with identifying and preserving to the maximum extent possible the assets of PPC is in the best interest of the victims of PPC's fraud, the best interests of PPC's trade creditors (including but not limited to Wachovia Bank N.A.), and the best interests of PPC merchant-clients that were not engaged in fraud (if there are any). The restrained PPC assets are not sufficient to pay a full measure of restitution for the victims of the defendants' fraud – at least $50 million – much less to pay restitution and also any of PPC's legitimate trade creditors. The government is not aware of a credible financial report accurately reflecting PPC's current financial condition, including how much of PPC's cash is properly considered shareholder or partner equity.[2]

The Court should appoint a temporary receiver because the defendants are not taking reasonable steps to protect PPC's assets. On the contrary, the defendants are squandering PPC's assets by taking substantial salaries and incurring operating costs that have not – and which are not likely in the foreseeable future – to result in income to PPC. A temporary receiver is needed to identify and secure PPC's assets and its accounting system, and to assure an orderly resolution of trade debts.

The Stipulated Preliminary Injunction provides that the Court-appointed Monitor shall inform the Court after 90 days if he determines that "PPC's revenues are not likely to exceed its

---

[2]        The Monitor may have created such a report. If so, the government does not have a copy.

operating expenses within a two (2) month period, or otherwise concludes that PPC is not viable

as a going concern." Stipulated Preliminary Injunction, ¶51. At the time the parties agreed to the

Stipulated Preliminary Injunction, the parties recognized that PPC would be challenged to engage

in payment processing under provisions designed to prevent processing for fraudulent merchant-

clients. The government initially requested that the Monitor file a solvency report after 60 days.

The parties compromised and agreed to a 90-day time period.

In accordance with the Stipulated Preliminary Injunction, the Monitor informed the Court

by letter on July 7, 2006, of his conclusions concerning PPC's viability. The Monitor reported:

> **By this letter we are informing the Court and the Parties that it
> is the Monitor's opinion that PPC as it is currently being
> operated under the terms of the [Stipulated Preliminary
> Injunction], is not viable as a going concern, nor is it likely to
> earn revenues in excess of its operating expenses in the
> foreseeable future.**

Letter of July 7, 2006, from Nihill Riedley to Hon. John R. Padova ("July 7 Letter"), Exhibit A,

(bold in original). The Monitor also has provided the Court (but not the parties) with a "bullet-

point summary" presenting facts to support its conclusions. Based upon the Monitor's

conclusions, the government submits that the Court should impose a temporary receiver for PPC

for the purpose of identifying and securing PPC's assets to the greatest extent possible and to

prevent the further waste of PPC's assets.

If PPC continues to remain under the control of the defendants, few if any PPC assets are

likely to be available to pay restitution to the defendants. As of today, approximately

$5 million of PPC's assets are restrained pursuant to the Court's temporary restraining order.[3]

---

[3] Attached as Exhibit B is a chart listing the PPC accounts restrained by the Court and the account balances as of June 30, 2006, with supporting bank statements.

Against this amount there are substantial claims, including:

- $2.25 million in PPC's accounts that Wachovia Bank claims belongs to it;

- $3.14 million in PPC's accounts that purportedly are balances due or reserves payable to PPC merchant-clients (according to PPC's financial documents);

- at least tens of thousands of dollars in victim refund requests are pending at PPC and have not been paid;

- approximately $260,077 in additional current liabilities to unrelated parties;

- approximately $47,000 in current liabilities to NFS Check Recovery Systems (a company that the defendants sometimes contend is part of PPC and at other times contend is a separate entity); and

- a threatened lawsuit by FEDEX in connection with a fraudulent billing scheme perpetrated by PPC against FEDEX with alleged damages exceeding $60,000.

These claims alone exceed the amount of the restrained funds. It reasonable to conclude that the defendants do not have any shareholder or partner equity in PPC.[4] Proper administration of existing claims against PPC's assets justify the imposition of a temporary receiver with business expertise, integrity, and interests beyond those of the defendants.

A temporary receiver will prevent the defendants from further wasting PPC's restrained assets. Since February 21, 2006, approximately $449,850 of PPC funds have been released from the asset restraints so that the defendants may continue to operate PPC. This includes $286,890

---

[4] One of PPC's largest assets is a loan payable of $730,023 from Nylon Holdings, an entity owned solely by defendant Donald Hellinger. Mr. Hellinger testified on July 10, 2006, that Nylon does not have significant cash on hand. PPC's loan payable asset therefore may be illusory.

as operating funds for a two-month period, based upon budgets prepared by the Monitor after consultations with the defendants. Despite this significant investment into PPC's ongoing operations, the defendants have little to show for it. According to the Monitor, PPC has no customers for its check processing operations. <u>See</u> Letter of July 5, 2006, from Nihill Riedley to Counsel ("July 5 Letter"), Exhibit C, at p. 2. PPC has advised the Monitor of only one potential merchant-client. The Monitor determined that the prospective merchant-client's application failed to satisfy the due diligence requirements set forth in the Stipulated Preliminary Injunction.[5] The defendants have reported to the Monitor that no merchant-clients are expected to do business with PPC in the near-term. <u>Id.</u> Despite the fact that PPC has no merchant-clients and no prospects, according to the Monitor's proposed budget for July 2006, PPC is requesting more than $51,000 for salaries alone.

Moreover, in the Monitor's July 5 Letter addressed to the parties, the Monitor raises concerns that the defendants are using PPC funds for purposes other than furtherance of PPC's business. <u>See</u> July 5 Letter at pp. 3-4. For example, the Monitor has found that funds released from the asset freeze are being used to operate NSF Check Recovery – a company that the defendants claim is separate from PPC, even though its is included in PPC's accounting system and its only full-time employee is currently being paid from restrained assets. The Monitor has concluded that Jami Pearlman, who has been receiving a salary from PPC of $5,417/month since

---

[5]     The government is perplexed by the defendants' statement in their motion to modify the Stipulated Preliminary Injunction that "the government has objected to virtually all clients that PPC has proposed to engage in processing." The government is aware of only one application submitted the Monitor following PPC due diligence, namely Continental Solutions. The Monitor, on his own, rejected that proposed merchant-client after identifying numerous problems with the application.

April 2006, is devoting herself "principally, if not exclusively" to non-PPC business. The Monitor also notes that PPC's failure to hire an accountant – a position for which the Monitor with the government's consent has budgeted money – increases the risk that the integrity of PPC's accounting system will be compromised, and thus may impair PPC's ability to provide the Monitor with reliable accounting information. See Letter of July 5 at 3.

In addition to money released from the Court's asset restraints to support PPC's operations, more than $332,000 of restrained funds have been released from the Court's asset restraints to pay for PPC's own legal fees, and a request for another $86,075 (for May 2006) is pending before Judge Rice. The government anticipates that defendants' counsel will submit substantial invoices for June and July 2006.[6] These legal fees are not likely to provide any benefit to PPC as an independent entity: the company now exists only as a vehicle for the defendants to extract salaries for themselves, and as a source of money to pay operating expenses for their non-PPC business endeavors. PPC's legal fees are likely to increase exponentially as the date of the permanent injunction hearing approaches, without any likelihood that PPC's business will improve during that time.

PPC's restrained assets are dissipating at an alarming rate. To prevent waste and to increase the likelihood that the restrained funds will be safeguarded to the maximum extent possible, the government requests the appointment of a temporary receiver under 18 U.S.C. §1345(a)(2)(b)(ii) and the Court's equitable powers. The government respectfully proposes that the Court consider the appointment of Wayne D. Geisser, CPA, CVA, CFE, of Nihill Riedley as

---

[6] The defendants' motion to permit PPC to use restrained assets to pay the defendants' personal attorneys' fees is pending before Judge Rice.

the temporary receiver. Mr. Geisser, with the support of his colleague Ricardo J. Zayas, CPA, CVA, CFE, has served as the Monitor for PPC and is as familiar as anyone (other than perhaps some of the defendants) with PPC's complex financial architecture. Messrs. Geisser and Zayas have worked closely with the defendants and the defendants counsel since late-March 2006 without any disputes known to the government. Mr. Geisser previously has served as a receiver for the Court. Moreover, billing for the Monitor's services in this matter has been reasonable.

The defendants already have acknowledged that it is appropriate for PPC to "scale down its operations to preserve assets as much as practicable." Def. Mot at p. 3. Defendants speculate, however, that a receiver would affect a "non-reversible liquidation" in which PPC's computers and software programs would be sold in a "fire-sale context." On the contrary, the government maintains that a temporary receiver should be charged with securing PPC's physical assets, identifying and collecting PPC's financial assets, reasonably resolving PPC's trade debts to innocent creditors, safeguarding the integrity of PPC's records and accounting system, and otherwise acting to preserve PPC's assets. The temporary receivership would not necessarily dispose of PPC's property, and indeed the Court could order the temporary receiver not to liquidate computers, telephone and office equipment. Depending upon how this action is resolved, the Court could later convert the temporary receivership to a permanent receivership for the purpose of affecting an orderly dissolution and liquidation of PPC, or in the event the defendants were to prevail at the permanent injunction hearing, to return PPC's assets to the defendants' control.[7]

_____

[7] Defendants rely upon <u>Waldell v. Shriber</u>, 348 A.2d 96, 102 (Pa. 1975) for the proposition that the Court should balance the interests of the parties before deciding whether to impose a receiver. The balancing of interests in this case supports the government's motion for a

For these reasons, the United States of America respectfully requests that the Court appoint Wayne D. Geisser, CPA, CVA, CFE, of Nihill & Riedley, as the temporary receiver for Payment Processing Center, LLP.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

_____
VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division

_____
JOEL M. SWEET
Assistant United States Attorney

_____
MARK ANDERSON
Assistant United States Attorney

Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel.  215-861-8200
Fax. 215-861-8349

Dated: July 14, 2006

_____

temporary receivership.  All of those with an interest in PPC's restrained assets – the victims of the defendants' fraud, PPC's trade creditors, PPC's merchant-clients, and even the defendants – will be well-served if the assets if PPC are not wasted in advance of a ruling by the Court after the permanent injunction hearing.

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2006, a copy of the foregoing Government's Motion for

Appointment of Temporary Receiver for Payment Processing Center, LLC, was filed

electronically and made available to counsel on the ECF system, and also copies were sent by

first class mail to each of the following:

Peter J. Scuderi, Esquire
1420 Walnut Street
Suite 1000
Philadelphia, PA 19102
FAX: (215) 790-9055

Andrew Lustigman, Esq.
The Lustigman Firm, P.C.
149 Madison Avenue, Suite 805
New York, NY 10016-6713
FAX: (212) 683-9181

Marc Durant, Esquire
Durant & Durant
325 Chestnut Street, Suite 1116
Philadelphia, PA 19106
FAX: (215) 592-9994

Stephen R. LaCheen, Esquire
LaCheen, Dixon, Wittels & Greenberg
1429 Walnut Street, Suite 1301
Philadelphia, PA 19102-3933
FAX: (215) 561-1860

Jack Meyerson, Esquire
Peter A. Greiner, Esquire
1700 Market Street, Suite 3015
Philadelphia, PA 101-3
FAX: (215) 972-0277

David M. Howard, Esquire
Sarah L. Westbrook, Esquire
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

Jami M. Pearlman
4 Hampshire Drive
Ivyland, PA 18974

Gino J. Benedetti, Esquire
Alexandra C. Gaugler, Esquire
Miller Alfano & Raspanti, P.C.
1818 Market Street
Philadelphia, PA 19103
FAX: (215) 981-0082

_____
JOEL M. SWEET
Assistant United States Attorney