**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PAYMENT PROCESSING CENTER, LLC,** | : | **NO. 06-0725** |
| **et al.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM OPINION</u>**

**TIMOTHY R. RICE**
**UNITED STATES MAGISTRATE JUDGE**                    **July 26, 2006**

Defendant Payment Processing Center, LLC ("PPC") contends it should be permitted under state law, 15 Pa. Cons. Stat. Ann. § 8945, to indemnify seven corporate agents who are defendants in a mail fraud injunction action under 18 U.S.C. § 1345, and to advance legal fees and costs to each individual defendant. All of PPC's funds, however, are subject to a court-ordered property restraint pursuant to § 1345, which the government contends should remain intact to preserve restitution for alleged fraud victims. Thus, PPC's assertion of its state law and corporate rights must be evaluated in the context of a lawfully imposed § 1345 property restraint.

For the following reasons, defendant's motion is granted in part. Contrary to the government's claim, the legal interests of individual defendants are not fully served by PPC's corporate counsel, especially in a § 1345 action that features the looming presence of an ongoing, parallel criminal probe. As a matter of fairness, individual defendants merit separate and independent legal counsel to defend themselves. To the extent each defendant establishes he or she can obtain counsel only if restrained assets are released, I will consider proposals to fund reasonable attorney's fees not to exceed $250 per hour, subject to judicial review and approval on

a monthly basis.

I.      Introduction

On February 21, 2006, the Hon. John R. Padova, United States District Court Judge, entered an Amended Temporary Restraining Order ("TRO") under § 1345 enjoining PPC's business operations and restraining approximately $10.1 million.  The TRO was converted to a Stipulated Preliminary Injunction Order on April 7, 2006.  The government established probable cause that the restrained property relates to a scheme in which PPC processed unsigned bank drafts procured through consumer fraud.

The government's Amended Verified Complaint for Injunctive Relief, filed July 6, 2006, alleges PPC processed $50 million of victims' "fraud-tainted money" for various merchant-clients engaged in telemarketing, direct marketing, and mail solicitations between April, 2005 and December, 2005.  The government seeks to permanently enjoin defendants from alleged unlawful activities and to preserve sufficient property as restitution for the alleged victims.  PPC contends, however, only about $2 million was derived from the alleged fraud detailed in the government's complaint, and that individual defendants received net profit of only $4.5 million from all of PPC's various ventures.  It claims the government's restraint of $10.1 million under § 1345 far exceeds the amount the government could expect to restrain if it prevailed on the merits.  Thus, PPC should be permitted to exercise its lawful right to indemnify its agents from and against all claims and demands in this case.

Since April, 2006, judicial orders have authorized release of nearly $800,000 in restrained property, involving a variety of expenses, including:  corporate legal bills ($385,000), business operations approved by the restraining order ($186,000), fees to pay the third-party

monitor of the business ($69,000), and customer refunds ($120,000).  Although the monitor has

recommended PPC be placed in receivership, an issue scheduled for resolution on August 21,

2006, significant corporate legal fees are anticipated as the parties prepare for an October 5, 2006

final hearing on the government's § 1345 complaint.

II.     PPC's Right to Indemnify Corporate Agents

As a limited liability company, PPC has a statutory right to indemnify any member,

manager, or other person "from and against any and all claims and demands whatsoever."  §

8945(a).  Defendants Donald Hellinger, Michael Weisberg, Randy Trost, Jami Pearlman, Michele

O'Keefe Quigley, Ronald Hellinger, and Robert DeBoyace are managers, members, or employees

of PPC.  Accordingly, PPC invokes § 8945(d) to advance payment of all expenses incurred by the

individual defendants before final disposition of the § 1345 suit.  As required, the seven

individual defendants have – through legal counsel – signed an "undertaking" pledging to repay

the advanced expenses "if it shall ultimately be determined that [they are] not entitled to be

indemnified" by PPC.  See § 8945(d).[1]

PPC's statutory right to indemnify its agents, however, is not absolute.  It is subject

to "such standards and restrictions, if any, as are set forth in the operating agreement."  § 8945(a).

Moreover, indemnification "shall not be made in any case where the act giving rise to the claim

for indemnification is determined by a court to have constituted willful misconduct or

recklessness."  § 8945(b).  The government contends these provisions preclude PPC's request to

indemnify its officers as a matter of law because PPC's operating agreement is silent on the issue

---

[1]  PPC asserts legal counsel for the individual defendants are working without
compensation or have continued their representation after exhausting funds from initial retainers.

3

of indemnification, and Judge Padova found probable cause to believe the restrained property related to fraud.

Neither issue is dispositive.  Although PPC's failure to express its written intent to indemnify agents casts some doubt on its sudden interest in doing so, PPC was not required to maintain any written operating agreement.  See § 8916.  Nor does PPC's failure to adopt an indemnification provision – despite its inclusion in a draft of the operating agreement – mean PPC affirmatively opted against indemnification.  In its formation, PPC granted its members all "rights and liabilities . . . as provided in the Act [§§ 8901-8998], except as otherwise provided for by this Agreement."  See Govt. Exh. "A" at § 1.01.  Such rights, of course, include a right to indemnify.  Absent additional evidence, the lack of an indemnification provision in PPC's operating agreement is insufficient to prove PPC's intent to restrict the broad indemnity authority  of § 8945.

Second, Judge Padova's ex parte finding of probable cause to support a § 1345 anti-fraud injunction fails to constitute the type of judicial resolution contemplated in § 8945.  A court cannot make a final determination of willful misconduct, e.g., fraud, or recklessness in the vacuum of an ex parte submission.  Our adversarial system of justice is founded on the notion that allegations of wrongdoing must be tested through discovery, confrontation, cross-examination, and courtroom advocacy in a public forum.  An ex parte probable cause finding made only to preserve the status quo pending final resolution of the question of wrongdoing is insufficient to constitute a § 8945 judicial determination.  Cf. United States v. Michelle's Lounge, 39 F.3d 684, 699 (7th Cir. 1994) (noting in context of civil forfeiture proceeding that ex parte proceedings "pose a substantial risk of error").

4

Accordingly, PPC has established it is permitted, under state law, to indemnify its corporate agents and advance legal fees and costs based on the agents' pledge to repay the funds if indemnity is later deemed improper, e.g., if the government prevails on the merits and defendants' conduct is deemed "willful misconduct or recklessness."[2]

### III.    Release of Restrained Property for Legal Fees

PPC, however, has no unrestrained funds to advance.  The government contends equity demands the $10.1 million in restrained property (about $3.6 million of which was seized from individual defendants) must be preserved as restitution for alleged fraud victims.  Moreover, if defendants prevail in the underlying § 1345 action, the government notes PPC will be able to indemnify the defendants at that time.  In any event, the government alleges, PPC's corporate legal counsel can adequately represent the interests of the individual defendants.

Although victim restitution is a primary focus of § 1345, see United States v. Payment Processing Center, LLC, 2006 WL 1719593 at *2-3 (E.D. Pa. June 23, 2006), the government oversimplifies the inquiry of monetary liability.  It is unclear how much of the $10.1 million in restrained property will remain by October, 2006 when the case is heard on the merits, and of that amount, how much will be set aside for possible restitution if the government prevails. For example, defendants claim if they are liable for every consumer transaction they processed, their exposure is limited to $4.5 million, the amount of net profits they retained.  See Federal Trade Comm'n v. Verity Int'l, Ltd., 443 F.3d 48, 67 (2d Cir. 2006).  The government, however,

---

[2]  The government questions how an individual defendant could be both unable to afford legal counsel without resort to restrained property and able to repay PPC if a court finds indemnity is not permitted.  Resolution of that issue must await the financial disclosures submitted by defendants seeking counsel fees.  Moreover, the defendants state only that they will undertake to repay the advanced funds; not that they have the current financial ability to do so.

insists it will demonstrate $50 million in fraudulent transactions were processed by PPC defendants, who will be liable for the entire amount of fraud transactions they facilitated.

The precise amount of restitution at issue is relevant, but not dispositive. The record is not adequately developed to establish the potential restitution amount and the parties have not briefed the legal issue of how restitution should be measured. Moreover, the restrained assets – already depleted by approximately $800,000 since April, 2006 – will be reduced further as the litigation intensifies and until PPC's viability as an ongoing entity is resolved. For example, Wachovia Bank, N.A., a third party claimant, asserts it is entitled to $2,344,347, see United States v. Payment Processing Center, LLC, 2006 WL 1719593 at *1, and court-authorized legal fees and operating costs are expected to escalate as the parties litigate the merits of the § 1345 action. Nor am I persuaded by defendant's claim that the government should seek repayment of the $50 million in alleged fraud losses from the uncharged telemarketers, thereby diminishing the need to resort to the $10.1 million in restrained PPC assets for possible restitution. The government is in the best position to select its targets and it opted to attack the alleged fraud by focusing on the payment processor. At this point, the government has deemed the PPC defendants responsible for the entire loss, whatever that figure may prove to be.

In any event, indemnification at the conclusion of the action presumes each defendant has sufficient assets to fund a defense now. Although the Sixth Amendment's right to counsel applies only to criminal defendants, see Gideon v. Wainwright, 372 U.S. 335, 344 (1963), a defendant unable to fund a § 1345 defense merits some allowance from restrained property when the corporate entity seeks to indemnify its agents and wrongdoing has yet to be established. Moreover, corporate counsel is often inadequate to represent the interests of the individual

6

defendants, whose interests may vary from the corporation.  See, e.g. United States v. Stein, 2006 WL 1735260 at *11-14 (S.D.N.Y. June 26, 2006) (recognizing corporate defendant may avoid criminal prosecution by cooperating against its agents and refusing to pay its agents' legal expenses, creating an "obvious conflict of interest").  It is easy to imagine myriad conflicts inherent in the investigation of corporate fraud.  One party may seek to curry favor with the government by cooperating, while another party may advance legitimate factual or legal challenges, including assertion of Fifth Amendment rights.  Last week, for example, PPC counsel sought an order directing the government to grant immunity to individual defendants and precluding the use in any subsequent criminal proceeding of testimony provided by individual defendants in the § 1345 action.  See Defendants' Motion to Preserve Individuals' Fifth Amendment Rights.  Such filings illustrate the complex legal issues implicating both PPC's interests and those of the individuals.  Experienced legal counsel may differ on the appropriate course of action, and individuals should not be required to ride the coattails of counsel who may encounter divided loyalties.

Proceeding without conflict-free counsel could taint any ultimate determination of § 1345 liability, as well as the § 8945 question whether defendants engaged in willful misconduct or recklessness.  Each defendant should be entitled to independent legal counsel to guarantee a full and fair proceeding on the question of underlying liability, which in this case will directly impact the indemnification inquiry.

As a result, fundamental fairness requires that defendants in a § 1345 action have access to restrained property if that is their only means of securing counsel.  For example, in CFTC v. American Metals Exch. Corp., 991 F.2d 71, 79-80 (3d Cir. 1993), the court upheld the

district court's discretionary refusal to pay an individual defendant's attorney's fees using funds restrained in a receivership.  The court noted the individual defendant had access to funds not covered by the assets freeze, and had used those funds to pay some of his legal bills.  Moreover, the court noted, the individual defendant had "been slow to produce his financial records to the court."  Id.

The focus on defendant's ability to fund a defense is an important factor in determining whether equity favors use of restrained property for defense costs.  Although American Metals involved a defendant in receivership after a judicial finding of fraud, the district court's decision to place the burden on the defendant to justify modification of a property restraint for payment of individual attorney's fees was based on Federal Savings & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 564-65 (5th Cir. 1987).  See CFTC v. American Metals Exch. Corp., 775 F.Supp. 767, 788 (D. N.J. 1991).  In Dixon, the court held funds restrained by banking regulators as proceeds of illegal lending practices could be released to pay attorney's fees only if the defendant "is able to show he cannot pay them from new or exempt assets."  See Dixon, 835 F.2d at 565.  The court required defendant to prove "he can secure the services of an attorney only if assets subject to the freeze order are released."  Id.  Similarly, in SEC v. Infinity Group Co., 212 F.3d 180, 197 (3d Cir. 2000), the court held the district court did not abuse its discretion by revoking permission that funds restrained in receivership could be used for defendants' legal fees. The court reasoned that the decision was "prudent inasmuch as the defendants were attempting to raise funds to pay for legal services."  Id. (citing American Metals, 991 F.2d at 79).  In exercising equitable discretion to balance the various interests implicated in this inquiry, nothing limits my examination of a defendant's ability to independently fund a defense only if defendants are in

receivership or the subject of a judicial finding of fraud.

Releasing restrained funds to pay attorney's fees is premised on the fact that wrongdoing is not yet proven when the fee application is made.  See CFTC v. Noble Metals Int'l, 67 F.3d 766, 775 (9th Cir. 1995).  Although the Supreme Court has set forth reasons why criminal defendants have no constitutional right to legal fees from forfeited or forfeitable funds, see Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989); United States v. Monsanto, 491 U.S. 600 (1989), that rationale does not merit denying a defendant in a § 1345 action a reasonable claim for fees from restrained property upon the appropriate showing before the § 1345 complaint has been resolved on the merits.[3]  Moreover, the analysis in Caplin & Drysdale rested on the premise that Congress declared that title to forfeitable property vests with the government at the time the underlying crime was committed (the "relation back" doctrine).  Caplin & Drysdale, 491 U.S. at 627.  Section 1345 features no such title reversion and instead focuses on preventing further injury to victims until a criminal investigation is completed.  United States v. Payment Processing Center, LLC, 2006 WL 1719593 at *1, *3 (citing legislative history and goals of § 1345).

Requiring defendants to prove an inability to afford counsel before lifting a property restraint is also consistent with the established burden-shifting rules in the context of other asset restraints.  Cf. Longenette v. Krusing, 322 F.3d 758, 766 n.11 (3d Cir. 2003) ("innocent owner" claimant in civil drug forfeiture case asserts an affirmative defense and must prove by a preponderance of the evidence that proceeds are his and he was unaware of proceeds'

---

[3]  In a criminal case, of course, an indigent defendant would be eligible for court-appointed counsel.  Thus, a criminal defendant's inability to access property subject to forfeiture does not deprive the defendant of his right to counsel.  Caplin & Drysdale, 491 U.S. at 624.

criminal connection); <u>United States v. Farmer</u>, 274 F.3d 800, 804 (4th Cir. 2001) (defendant entitled to pretrial hearing if property is seized for civil forfeiture and he can demonstrate he needs access to wrongly seized assets to pay counsel); <u>Michelle's Lounge</u>, 39 F.3d at 701 (defendant is entitled to a post-seizure adversarial hearing in civil forfeiture action at which he may rebut the government's showing of probable cause and gain access to forfeited funds to pay counsel fees); <u>United States v. Fang</u>, 937 F.Supp. 1186, 1198-99 (D. Md. 1996) (once government establishes with reasonable probability account contains commingled fraud proceeds under § 1345, burden of production shifts to defendant to establish extent to which account contains unclean funds).

Accordingly, each individual defendant shall submit financial disclosures justifying the use of restrained property to pay legal fees in the § 1345 action.  This submission shall include reasonable estimates, at the hourly rate of $250 per hour for experienced counsel, of the fees necessary to defend the § 1345 complaint.  Any fee payments authorized will be subject to in camera review for duplication and reasonableness on a monthly basis before funds are disbursed.[4] To the extent financial disclosures have been provided to the government they should be updated, and within five (5) days, the government shall note any objections to a defendant's alleged inability to obtain counsel without resort to the restrained property.

This procedure fairly balances the government's justification for restraining the property with defendants' legal interest in a full and fair hearing on the merits.

An appropriate Order follows.

---

[4]  The hourly rate and the in camera review procedure is already established by agreement in the context of an order allowing release of restrained property to pay PPC legal expenses.

10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PAYMENT PROCESSING CENTER, LLC,** | : | **NO. 06-00725** |
| **ET AL.** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 26th day of July, 2006, upon consideration of defendant PPC's motion to modify the temporary restraining order to permit the payment of legal fees and costs of certain individuals, the government's response thereto, and following oral argument, it is HEREBY ORDERED that PPC's motion is granted in part.  To the extent a defendant establishes he or she can obtain counsel only if restrained assets are released, each defendant may submit proposals to fund reasonable attorney's fees not to exceed $250 per hour associated with their defense, subject to judicial review and approval on a monthly basis.

BY THE COURT:


  /s/ Timothy R. Rice
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE