IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PAYMENT PROCESSING CENTER, | : | |
| LLC et al. | : | NO. 06-0725 |

**MEMORANDUM**

**Padova, J.**                                                                                    **October 18, 2006**

      Plaintiff, the United States of America, brought this action against Defendants pursuant to the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345.  Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint.  Defendants move this Court to either dismiss Plaintiff's Amended Complaint for failure to join necessary and indispensable parties pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19 or order Plaintiff to join all necessary parties, or to dismiss the Amended Complaint for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b).  For the reasons stated below, Defendants' Motion to Dismiss is granted in part and denied in part.

I.     BACKGROUND

      On February 17, 2006, the Government brought this civil action under the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, against Defendants Payment Processing Center, LLC ("PPC"), Donald M. Hellinger, Michael Weisberg, Randy D. Trost, Jami M. Pearlman, Michelle O'Keefe Quigley, Ronald Hellinger, and Robert Deboyace.  The Government seeks to enjoin allegedly fraudulent conduct by Defendants based on violations of federal mail fraud and wire fraud statutes,

18 U.S.C. §§ 1341 and 1343, respectively, and federal banking law as defined by 18 U.S.C. § 3322(d). The Government seeks injunctive and other equitable relief to enjoin the commission of criminal fraud offenses by Defendants, to prevent continuing and substantial injury to the victims of fraud, and to prevent the alienation and disposition of Defendants' assets derived from the alleged fraudulent conduct so that such assets will be available for distribution to the alleged victims of fraud.

On February 21, 2006, we entered an Amended Temporary Restraining Order ("TRO") pursuant to 18 U.S.C. § 1345, enjoining PPC's business operations and freezing approximately $10.1 million. On April 7, 2006, the TRO was converted to a Stipulated Preliminary Injunction Order.

The Government filed an Amended Verified Complaint for Injunctive Relief ("Amended Complaint") on July 6, 2006 alleging that, between April 2005 and February 2006, Defendants, using the United States mails and/or wires, and in concert with telemarketers in the United States and abroad, engaged in and enabled predatory fraudulent direct marketing schemes. (Am. Compl. ¶ 3.) The schemes were designed to extract money from victims' bank accounts on false pretenses and/or without authorization. (Id.) The Amended Complaint further alleges that PPC processed some $50 million of victims' "fraud-tainted money" for various merchant-clients engaged in telemarketing, direct marketing, and mail solicitation between April, 2005 and December, 2005. (Id. ¶¶ 4, 149-150.)

II. FAILURE TO JOIN A NECESSARY AND INDISPENSABLE PARTY

    A. <u>Legal Standard</u>

Defendants argue, pursuant to Federal Rule of Civil Procedure 12(b)(7), that the Amended Complaint should be dismissed for failure to join the telemarketers who participated in the allegedly

predatory and fraudulent direct marketing schemes as parties under Rule 19. Defendants ask, in the alternative, that the unnamed telemarketers be joined as additional defendants in this action.

Federal Rule of Civil Procedure 19, entitled "Joinder of Persons Needed for Just Adjudication," provides in pertinent part:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

The United States Court of Appeals for the Third Circuit ("Third Circuit") has instructed that the courts must first determine whether an absent party "is a necessary party who should be joined in the action. If the answer to that first question is yes, then the court must do so if feasible. If the answer to the first question is no, however, then the inquiry need go no further." Bank of Am. Nat'l Trust and Sav. Ass'n. v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1053-54 (3d Cir. 1988) (citing Abel v. American Art Analog, Inc., 838 F.2d 691, 695 (3d Cir. 1998)). Whether a particular case should be dismissed under Rule 19 "can only be determined in the context of [that] particular litigation." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968) (footnote omitted). The moving party has the burden of showing why an absent party should be joined pursuant to Rule 19. Nat'l Org. on Disability v. Tartaglione, Civ. No. 01-1923, 2001 U.S. Dist. LEXIS 16731, at *25 (E.D. Pa. Oct. 11, 2001) (citing Raytheon Co. v. Continental Cas. Co.,

123 F. Supp. 2d 22, 33 (D. Mass. 2000)).

To determine whether the party whose joinder is sought is necessary under Rule 19(a)(1), we consider "whether complete relief can be accorded to the parties to the action in the absence of the unjoined party." Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993). "Complete relief . . . refers to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought. Mere theoretical considerations of disposing of the whole controversy do not warrant compulsory joinder when it appears unlikely that the absent persons could be affected." Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, 895 F.2d 116, 121 (3d Cir. 1990) (quoting 3A Moore's Federal Practice ¶ 19.07-1[1], at 93-98 (2d ed. 1989)).

Subdivision 19(a)(2)(i) requires a court to decide whether determination of the rights of the parties before it would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation. Janney, 11 F.3d at 406. This subdivision "recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence." Fed. R. Civ. P. 19, Notes of Advisory Committee. Subdivision 19(a)(2)(ii), on the otherhand, is primarily aimed at protecting parties before the court. Sindia Expedition, 895 F.2d at 122. "The subdivision was enacted to protect parties from 'substantial' risk of multiple or inconsistent obligations, not merely a possible risk." Id.

B.   Discussion

Defendants argue that the absent telemarketers are necessary parties to this action under the Government's theory of the case, since the Government contends that the Defendants are guilty of mail fraud, wire fraud, and banking law violations because they knew or were willfully blind to the

4

fact that PPC's telemarketing clients were engaged in fraudulent activities. The question before us, therefore, is whether the court can accord complete relief in this action without joining the telemarketers as parties.

The Government seeks an injunction pursuant to 18 U.S.C. § 1345, which would enjoin Defendants from: (1) processing bank drafts in all instances where the purported authorization for the bank draft has been obtained in connection with outbound telemarketing and/or mail solicitations; (2) processing bank drafts in all instances where the return rate on deposited bank drafts for a merchant telemarketer exceeds two (2) percent in any one-week period; (3) processing bank drafts for all merchants that are, or have been within the past two years, the subject of an action or inquiry by any state or federal regulatory agency; (4) processing bank drafts for all merchants owned by, or that employ, or that consult with, a person who is, or who has been within the past two years, the subject of an action or inquiry by any state or federal regulatory agency; (5) establishing any new bank accounts without informing the government in advance; (6) dissipating, or otherwise using, any personal or business assets derived from telemarketing-related activities and/or payment processing-related activities; (7) opening safe-deposit boxes and/or safes into which proceeds from telemarketing-related activities and/or payment process-related activities have been deposited, transferred, or placed; (8) concealing from Plaintiff any assets and requiring Defendants to disclose the identity of the various financial institutions into which proceeds have been deposited; (9) destroying any records relating to the business of PPC, and any business activity related to telemarketing and/or payment processing. (Am. Compl. ¶ 395.) The requested injunction would also freeze assets in various bank accounts owned by Defendants. (Id.)

Defendants rely on Glades Pharm., LLC v. Call, Inc., Civ. A. No. 04-4259, 2005 U.S. Dist.

LEXIS 3696 (E.D. Pa. Mar. 9, 2005), to support their position that the absent telemarketers are necessary parties under subsection 19(a)(1). In <u>Glades</u>, the plaintiff sought monetary and injunctive relief in a suit alleging copyright infringement, conspiracy, aiding and abetting breach of fiduciary duty, conversion, and unjust enrichment. <u>Id.</u> at *3. The court concluded that the absent joint tortfeasor was a necessary party under Rule19(a)(1) because he was an "active participant" in the tortious conduct alleged in the complaint and the court believed that, under the circumstances presented, it could not grant complete relief without the joint tortfeasor. <u>Id.</u>

In the instant action, the fact that the absent telemarketers may have been "active participants" in Defendants' fraudulent conduct is immaterial to the question of whether we are able to accord complete relief without them. Unlike the situation presented in <u>Glades</u>, where the court found it could not accord complete relief with the absence of a joint tortfeasor, we do not have an inability to accord complete relief. The nature of the relief sought in this action, namely the injunction of Defendants' allegedly fraudulent behavior, and an injunction freezing Defendants' assets, can be accorded without joining the absent telemarketers. Therefore, we find that the absent telemarketers are not necessary parties under Rule 19(a)(1).

Defendants also argue that the absent telemarketers are necessary parties under Rule 19(a)(2). They maintain that, because the Government claims that they either knew or remained intentionally ignorant and willfully blind to the fact that telemarketers for whom PPC provides payment processing services are fraudsters, the central issue in this case will be whether the telemarketers at issue engaged in fraud in their communications with their customers, and therefore, the telemarketers are necessary parties under Rule 19(a)(2). Though Defendants have failed to specify the subdivision of Rule 19(a)(2) on which they rely, we infer from their argument that they rely on subdivision

19(a)(2)(i) because they make no claim that they will be subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations if the absent telemarketers are not joined.

Under Rule 19(a)(2), a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if "the person claims an interest relating to the subject of the action" and at least one of the conditions in the two subdivisions of Rule 19(a)(2) is satisfied. Fed. R. Civ. P. 19(a)(2). Satisfying Rule 19(a)(2) initially requires that the absent party claim a legally protected interest relating to the subject matter of the action. See Memphis Equipment Co., Inc. v. Robinson, Civ. A. No. 06-0497, 2006 U.S. Dist. LEXIS 39644, at *13 (M.D. Pa. June 15, 2006) (citing Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996)). Consequently, to the extent that Defendants' motion relies on Rule 19(a)(2), it is denied, as there has been no showing that the absent telemarketers have claimed an interest relating to the subject of the action. Furthermore, this action has been brought by the Government to determine only whether these Defendants are engaging in, or are about to engage in, conduct in violation of federal mail fraud, wire fraud, and banking laws, and whether the Government is entitled to the requested injunctive relief. Consequently, no rights of the absent telemarketers will be "impeded or impaired," and they are not necessary parties under Rule 19(a)(2)(i).

Because we find that the absent telemarketers are not necessary parties under Rule 19(a)(1) or (a)(2), Defendants' Motion to Dismiss pursuant to Rule 12(b)(7) for failure to join a necessary and indispensable party under Rule 19, or, in the alternative, to require the Government to join the absent telemarketers, is denied.

III.   FAILURE TO PLEAD FRAUD WITH PARTICULARITY

A. Legal Standard

Defendants request that we dismiss the Amended Complaint for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b). Rule 9(b) requires that all averments of fraud be stated with particularity "in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Corp., 742 F.2d 786, 791 (3d Cir. 1984). There is no formula for pleading fraud with particularity: "allegations of 'date, place, or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. In applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)).

B. Discussion

Defendants contend that the Amended Complaint fails to: (1) separately notify Defendants of the precise misconduct with which they have been charged; (2) specifically describe the fraudulent conduct of the telemarketers; and (3) distinctly allege the manner in which each Defendant was aware of the fraudulent conduct of the telemarketers. Defendants also argue that the Government's allegations of fraud "based upon information and belief" do not satisfy the requirements of particularity.[1]

---

[1] The Amended Complaint seeks to enjoin allegedly fraudulent conduct by Defendants based on violations of federal mail, wire, and bank fraud statutes. The elements of mail fraud in violation of 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud; (2) the participation by the

A. Legal Standard

Defendants request that we dismiss the Amended Complaint for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b). Rule 9(b) requires that all averments of fraud be stated with particularity "in order to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Corp., 742 F.2d 786, 791 (3d Cir. 1984). There is no formula for pleading fraud with particularity: "allegations of 'date, place, or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. In applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)).

B. Discussion

Defendants contend that the Amended Complaint fails to: (1) separately notify Defendants of the precise misconduct with which they have been charged; (2) specifically describe the fraudulent conduct of the telemarketers; and (3) distinctly allege the manner in which each Defendant was aware of the fraudulent conduct of the telemarketers. Defendants also argue that the Government's allegations of fraud "based upon information and belief" do not satisfy the requirements of particularity.[1]

---

[1] The Amended Complaint seeks to enjoin allegedly fraudulent conduct by Defendants based on violations of federal mail, wire, and bank fraud statutes. The elements of mail fraud in violation of 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud; (2) the participation by the

The Amended Complaint alleges that Defendants engaged in or enabled large-scale consumer fraud based on predatory direct marketing schemes. (Am. Compl. ¶ 3.) Defendants' conduct consisted primarily of the creation and deposit into the banking system of unsigned bank drafts, and was central to the success of the fraudulent schemes. (Id.) The fraudulent schemes began with unsolicited telephone calls in which telemarketers induced individuals to provide their personal bank information. (Id. ¶ 5.) PPC then printed demand drafts to be drawn from victims' accounts and deposited into PPC's account. (Id. ¶ 6.) Defendants knew or remained intentionally ignorant and willfully blind to the fact that the telemarketers used misrepresentations and false promises to induce victims to disclose their personal bank information. (Id. ¶ 7.) Defendants knew that more than half of the bank draft transactions PPC processes for its telemarketing clients are reversed or returned due to victims' banks rejecting the bank drafts as potentially fraudulent, unauthorized, or otherwise suspicious, or because the victims' account have insufficient funds. (Id. ¶ 10.) PPC was also aware that the telemarketing schemes were fraudulent because it reviewed the telemarketing scripts used to commit the fraud. (Id. ¶ 8, 12, 164-172.) The Amended Complaint further details the role that each of the individual Defendants played in the operation of PPC. (Id. ¶ 31-84.) The Amended

---

defendant in the particular scheme charged with the specific intent to defraud; and (3) the use of the United States mail in furtherance of the fraudulent scheme. State Farm Mutual Automobile Ins. Co. v. Makris, Civ. A. No. 01-5351, 2003 U.S. Dist. LEXIS 3374, at *19 (E.D. Pa. Mar. 4, 2003). Wire fraud requires proof of (1) the defendant devising or intending to devise (2) a scheme or artifice to defraud (3) the use of wires for purposes of executing or attempting to execute scheme or artifice, and (4) knowledge by defendant of that use. Phila. Reserve Supply Co. v. Nowalk & Assocs., Inc., 864 F. Supp. 1456, 1470 (E.D. Pa. 1994). The federal bank statute makes it a crime to "knowingly . . . execute, or attempt to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." United States v. Khorozian, 333 F.3d 498, 503 (3d Cir. 2003) (explaining that the test must be read conjunctively).

Complaint contains specific details, including time, date and place, of allegations of fraud against a "typical" victim. (Id. ¶ 138-141.) The Amended Complaint also contains a telemarketing script that the government contends was received by PPC and used as part of a fraudulent telemarketing scheme. (Id. ¶180-181.) We conclude that the allegations contained in the Amended Complaint are of sufficient particularity to put Defendants on notice of the precise misconduct with which they are charged. Thus, Defendants' argument that the Amended Complaint fails to separately notify them of the precise misconduct with which they have been charged, specifically describe the fraudulent conduct of the telemarketers, and distinctly allege the manner in which each Defendant was aware of the fraudulent conduct of the telemarketers is without merit.

      C.      Allegations Asserted Upon Information and Belief

Defendants further argue that the Amended Complaint lacks particularity and should be dismissed because it contains numerous allegations of fraud based "upon information and belief" and the Government has not included with the Amended Complaint a statement of the specific grounds on which those assertions rest. "Pleadings alleging fraud usually may not be based on information and belief." 2 James Wm. Moore et al., Moore's Federal Practice § 9.03 [g] (3d ed. 2005). However, courts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud, and, in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. In re Craftmatic Sec. Litig., 890 F.2d 628, 645 (3d Cir. 1989) (citing Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir.1987), and 5 C. Wright & A. Miller, § 1298 at 416 (1969)). Thus, the requirements of Rule 9(b) are relaxed when factual information is peculiarly within the defendant's knowledge and control. Craftmatic, 890 F.2d at 645 (citing

cases); see also Shapiro v. UJB Fin. Corp., 964 F.2d 272 (3d Cir. 1992) (holding that where the facts are in the exclusive possession of the adversary, courts should permit the pleader to allege the facts on information and belief, provided a statement of the facts upon which the belief is found is proffered). However, even under this relaxed application of the rule, allegations based on information exclusively in the defendants' control must be accompanied by a statement of the facts upon which those allegations are based. Shapiro, 964 F.2d at 285 (citing Craftmatic, 890 F.2d at 645; Moore v. Kayport Package Express, Inc. 885 F.2d 531, 540 (9th Cir. 1989); 2A James W. Moore & Jo D. Lucas, ¶ 9.03[1] at 9-29 to 9-29) (1991)); see also In re Rockefeller Center Properties, Inc., 311 F.3d 198, 216 (3d Cir. 2002) (holding that "[E]ven when the defendant retains control over the flow of information, boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.") In situations where a complaint contains a boilerplate allegation that plaintiffs believe the necessary information "lies in defendants' exclusive control," the complaint "must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity." Shapiro, 964 F.2d at 285; see also Weiner v. Quaker Oats Co., 129 F.3d 310, 319-20 (3d Cir. 1997) (holding that Rule 9(b) requirements were met where a complaint listed the sources of information plaintiffs reviewed and asserted that the "underlying information relating to defendants' misconduct and the particulars thereof" lie exclusively within the possession and control of defendants).

Eleven of the 395 paragraphs of the Amended Complaint incorporate the phrase "upon information and belief." Paragraphs 158, 161, 343, 360, and 383 do not contain allegations of fraud against Defendants, but are rather averments of background information meant to provide context

and develop relevant facts. See Tracinda Corp. v. DaimlerChrysler AG, 197 F. Supp. 2d 42, 70-71(D. Del. 2002) (holding that certain averments which by themselves did not plead fraud with particularity were not averments of fraud, but were instead averments of background information not subject to Rule 9(b), and that taking the allegations as a whole, the complaint met the requirements of Rule 9(b)). Paragraph 158 of the Amended Complaint states: "From April 2005 until December 2005, upon information and belief based upon analysis of bank records, PPC issued 8,202 separate refund checks with an aggregate value of $1.54 million to telemarketing victims. The average refund was approximately $188." (Am. Compl. ¶ 158.) Paragraph 161 states: "Upon information and belief, a large number of PPC's victims do not obtain refunds because they are intimidated or daunted by the challenge of demanding a refund, or because they are unaware that they were victims of fraud." (Id. ¶ 161.) Paragraph 343 states: "D. Hellinger travels frequently to Montreal, Canada, where, upon information and belief, he conducts business with Canada-based fraudulent telemarketers." (Id. ¶ 343.) Paragraph 360 states: "At the time of the filing of this Amended Complaint, upon information and belief, the defendants use Depository Account '797 as the primary account for depositing of bank drafts relating to telemarketing fraud." Paragraph 383 states: "Upon information and belief, Helen IT Systems is a St. Lucia-based company providing boiler room cold-call services to fraudulent telemarketers who prey on victims in the United States." (Id. ¶ 383.) None of the averments in these five paragraphs allege any of the elements of either mail, wire, or bank fraud. We find, accordingly, that these averments are not averments of fraud and that the requirements of Rule 9(b) are inapplicable.

The remaining paragraphs asserted "upon information and belief" allege facts which, if true, constitute an element required to prove mail, wire, or bank fraud on the part of Defendants, and,

therefore, must satisfy the requirements of Rule 9(b). Paragraph 183 states: "Upon information and belief, PPC has responded to victims' complaints, law enforcement inquiries, or consumer protection agency inquiries, concerning many of its telemarketing clients." (Id. ¶ 183.) This paragraph is relevant to the Government's contention that Defendants knew they were participating and enabling telemarketing fraud on a massive scale, or that they remained intentionally ignorant and willfully blind to that fact. In numerous paragraphs throughout the Amended Complaint, the Government pleads allegations that directly support the allegation that PPC has responded to complaints and inquiries concerning its telemarketing clients. For example, the Government asserts, "The defendants receive a large number of complaints lodged against PPC an/or its merchant-clients, including a substantial number of demands by victims of fraud for refunds." (Id. ¶ 13.) "The defendants have received inquiries from law enforcement and consumer protection agencies concerning PPC's merchant-clients' sales practices, as well as its own practices." (Id. ¶ 14.) "Since February 21, 2006, pursuant to orders of the Court, PPC has paid victim refunds in the amount of approximately $148,500." (Id. ¶ 160.) The Amended Complaint also asserts that PPC's special regulatory counsel has represented to the Attorney General of North Dakota that PPC "undertakes a due diligence investigation" of its merchant-clients to assure that they comply with applicable laws. (Id. ¶ 165.) Additionally, the Amended Complaint asserts that PPC's purported policy of providing refunds to victims who complain to PPC is designed to minimize victim's complaints to law enforcement authorities and consumer protection agencies. (Id. ¶ 184.) Finally, the Amended Complaint asserts that Defendant Trost communicates on behalf of PPC with state law enforcement officials in connection with investigations of PPC's telemarketing clients. (Id. ¶ 187.)

Paragraph 194 states: "PPC's largest merchant-clients receiving bank draft services, and upon

information and belief a large majority of PPC merchant-clients, are engaged in deceptive sales practices." (Id. ¶ 194.) The averment that PPC's merchant-clients are engaged in deceptive sales practices is central to the Government's allegations that Defendants' participated in mail, wire, and bank fraud schemes in conjunction with PPC's merchant-clients, or have remained intentionally ignorant of the merchant-clients' fraudulent schemes. This allegation is supported by various paragraphs in the complaint. The Amended Complaint asserts that PPC processed bank drafts for various merchant-clients engaged in deceptive and abusive telemarketing or direct marketing schemes and specifically describes those schemes. (Id. ¶¶ 200-262.) The various merchant-clients include: Star Communications/Family Fun Pass, Consumer Reward Network, Premier Benefits, Continuity Partners, GSI Grant Service, AEZ Global Marketing, Your Choices, Inc., Business Resource Network, AIG Limited, American Select, Free Medicine Direct, Travel Exchange Unlimited, and Denarius Financial. (Id. ¶¶ 201-259.) The Amended Complaint also asserts that bank draft return rates, which may be warnings that a merchant-client is engaged in consumer fraud, were as high as 60 and 58 percent on two depository accounts, and that, between April 2005 and December 2005, approximately $84.1 million of $142 million in deposits were eventually returned, indicating the possible scope of Defendants' fraudulent activities. (Id. ¶¶ 148-49.)

>Paragraph 313 states:

>During the period April 2005 until December 2005, in addition to the transfers to fraudulent telemarketers already identified in this Amended Verified Complaint, PPC wired more than $5 million to accounts in Canadian banks, including many accounts identified only by numbers. Upon information and belief, the money PPC wired to Canadian banks is the proceeds of cross-border telemarketing fraud.

(Id. ¶ 313.) This paragraph is central to the Government's contention that Defendants engaged in wire fraud by using the United States wires to carry-out a fraudulent scheme. Various paragraphs

14

in the Amended Complaint provide a factual basis for the portion of this paragraph based upon information and belief. PPC has performed demand draft processing on behalf of numerous deceptive and abusive telemarketers, many of which are based in Canada, India, and the West Indies. (Id. ¶ 193.) "Boiler room" call centers equipped with a large number of telephone lines are often located in foreign locations, such as Canada, India, and the West Indies. (Id. ¶ 111). PPC processed bank drafts for a merchant-client located in Montreal, Canada, and expected the operators of a particular grant scheme based there to have a return rate exceeding fifty percent. (Id. ¶ 156.) PPC provides payment processing services for Denarius Financial, which is believed to be located in Canada, and which perpetrated fraud upon a victim in the United States. (Id. ¶ 258.) PPC wired approximately $89,000 to Denarius Financial between April, 2005 and October, 2005. (Id. ¶ 259.) Canada has been identified by the United States as a country with substantial fraudulent telemarketing activity directed at victims in the United States. (Id. ¶ 311.) Montreal, Toronto, and Vancouver have been identified as Canadian cities with particularly active fraudulent telemarketing operations. (Id. ¶ 312.)

> Paragraph 352 of the Amended Complaint states:
>
> The defendants' individual deposits into Depository Account '232 ranged in amounts between $100,000 and $1 million. The individual deposits were comprised of hundreds or thousands of individual bank drafts. Upon information and belief, the vast majority or all of [sic] bank drafts were drawn on accounts of the victims of fraudulent telemarketers.

(Id. ¶ 352.) The allegations in this paragraph are central to the Government's contention that Defendants perpetrated mail, wire, and/or bank fraud because it details one of Defendants' specific roles in the fraudulent telemarketing schemes. Facts asserted in other paragraphs of the Amended Complaint support the allegation in the last sentence of paragraph 352. The Amended Complaint

15

asserts that Defendants deposited more than $88 million into Depository Account '232 between April 2005 and December 2005, and that Wachovia was required to return more than $52.8 million - or approximately sixty-percent - of Defendants' deposits into this account during this time period. (Id. ¶¶ 351, 353.)  The reasons for the returns included claims that the bank drafts had not been authorized, allegations of fraud by victims, and insufficient funds in payors' accounts. (Id. ¶ 353.)

> Similarly, paragraph 357 states:
>
> The defendants' individual deposits into Depository Account '548 ranged largely in amounts between $700,000 and $1.9 million. The individual deposits were comprised of hundreds or thousands of individual bank drafts. Upon information and belief, the vast majority or all of [sic] bank drafts were drawn on accounts of the victims of fraudulent telemarketers.

(Id. ¶ 357.)  Like the averments of paragraph 353, the averments of this paragraph support the Government's contention that Defendants perpetrated mail, wire, and/or bank fraud.  The portion of this paragraph that is based upon information and belief is also supported by facts alleged in other paragraphs in the Amended Complaint.  The Amended Complaint asserts that Defendants deposited more than $54 million into Depository Account '548 from November 2005 until December 2005, and that during the same time period, more than $31 million - or approximately 58% - of Defendants' deposits into Depository Account '548 were returned. (Id. ¶¶ 356, 358.)  The reasons for the returns included claims that the bank drafts had not been authorized, allegations of fraud, and insufficient funds. (Id. ¶ 358.)

We find that the additional pleading requirements outlined in Craftmatic and its progeny are inapplicable to the above five paragraphs because the averments made upon information and belief are amply supported by other allegations of fact made within the same paragraphs or in other paragraphs of the Amended Complaint.  See Sunset Fin'l Resources v. Redevelopment Group V,

LLC, 417 F. Supp. 2d 632, 646 (D. N.J. 2006) (holding that when a complaint contains the factual basis upon which allegations of fraud asserted upon information and belief are based, the complaint meets the requirements of Rule 9(b) and a blanket prohibition on pleading fraud allegations upon information and belief would be inappropriate). Furthermore, because the allegations in each of these paragraphs are clearly supported by other facts alleged in the Amended Complaint, the Government's use of the phrase "upon information and belief" is mere surplusage. The allegations of fraud contained in these paragraphs, combined with the supporting allegations, have sufficiently placed Defendants on notice of the precise misconduct with which they are charged, and have been pled in a manner which safeguards Defendants against spurious charges of immoral and fraudulent behavior. Consequently, we conclude that the averments of paragraphs 183, 194, 313, 352, and 357 satisfy the requirements of Rule 9(b).

Paragraph 335 states: "Upon information and belief, D. Hellinger provides fraudulent telemarketers, including entities identified in this Amended Verified Complaint, with names and telephone numbers of individuals who already have been victimized by fraudulent telemarketers and who are believed to be susceptible to other fraudulent schemes." (Id. ¶ 335.) This paragraph is wholly based upon information and belief, and is an explicit averment of individual participation by Defendant D. Hellinger in the fraudulent telemarketing schemes. The allegation in this paragraph appears to be related to paragraph 36, which alleges that Defendant D. Hellinger participates actively in other aspects of fraudulent direct marketing schemes by developing and trading in lists of "lead" names for fraudulent telemarketers. (Id. ¶ 36.) However, no further factual support is found in the Amended Complaint regarding the specific allegation in paragraph 335. We infer from this allegation based upon information and belief, and the lack of other factual support in the Amended

Complaint, that the Government asserts that the information necessary to pled this allegation with particularity lies in the exclusive control of Defendants.[2] The Government is, therefore, required to accompany such an allegation with a statement of facts upon which the allegation is proffered. The Government has not done so. Consequently, the Government has not satisfied the requirements of Rule 9(b) with respect to the allegation in paragraph 335, and it is stricken from the Amended Complaint for failure to plead fraud with particularity.

For these reasons, Defendants' Motion to Dismiss pursuant to Rule 9(b) for failure to plead fraud with particularity is granted with respect to paragraph 335. It is denied with respect to all other paragraphs of the Amended Complaint.

IV.   CONCLUSION

For the reasons stated above, we find that the absent telemarketers are not necessary parties, and, therefore, Defendants' request that the Amended Complaint be dismissed for failure to join necessary and indispensable parties pursuant to Rule 12(b)(7), or, in the alternative, for an order requiring the Government to join necessary and indispensable parties pursuant to Rule 19, is denied. Defendants' request that the Amended Complaint be dismissed for failure to plead fraud with particularity pursuant to Rule 9(b) is granted with respect to the allegations asserted upon information and belief in paragraph 335. It is denied with respect to all other allegations contained in the Amended Complaint. The Government may file an amended complaint curing this deficiency.

An appropriate order follows.

---

[2]In its Response to the Motion to Dismiss, the Government asserts that the allegations based upon information and belief concern information in the exclusive possession of Defendants and/or are supported by other allegations in the Amended Complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAYMENT PROCESSING CENTER, | : | |
| LLC et al. | : | NO. 06-0725 |

**O R D E R**

**AND NOW,** this 18th day of October, 2006, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Docket No. 174), and all documents filed in connection therewith, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion to Dismiss for failure to join necessary and indispensable parties, or, in the alternative, for an order requiring Plaintiff to join all necessary parties is **DENIED**.

2. Defendants' Motion to Dismiss for failure to plead fraud with particularity is **GRANTED** with respect to paragraph 335 of the Amended Complaint. Defendants' Motion to Dismiss for failure to plead fraud with particularity is **DENIED** with respect to all other paragraphs of the Amended Complaint.

3. Plaintiff may file a Second Amended Complaint curing the deficiency in paragraph 335 of the Amended Complaint on or before October 30, 2006.

BY THE COURT:

<u>s/ John R. Padova, J.</u>
John R. Padova, J.